1  Scott S. Humphreys (SBN 298021)
   BALLARD SPAHR LLP
2  2029 Century Park East, Suite 800
   Los Angeles, CA  90067
3  Telephone: 424.204.4400
   Facsimile: 424.204.4350
4  Email: humphreyss@ballardspahr.com

5  Paul J. Safier
   (*pro hac vice* application pending)
6  BALLARD SPAHR LLP
   1735 Market St., 51st Floor
7  Philadelphia, PA 19103
   Telephone: 215.665.8500
8  Facsimile: 215.864.8999
   Email: safierp@ballardspahr.com
9
   *Attorneys for Defendants*
10 *Higher Health Network, LLC,*
   *and Troy Shanks*
11

12               UNITED STATES DISTRICT COURT

13             SOUTHERN DISTRICT OF CALIFORNIA

14

15 GOLO, LLC,                          | Case No. 3:18-cv-2434-GPC

16                        Plaintiff,   | **MEMORANDUM OF POINTS AND**
                                       | **AUTHORITIES IN SUPPORT OF**
17       v.                            | **DEFENDANTS' MOTION TO**
                                       | **DISMISS AMENDED COMPLAINT**
18 HIGHER HEALTH NETWORK, LLC,         | **FOR FAILURE TO STATE A CLAIM**
   and TROY SHANKS.
19                                     | Judge:   Hon. Gonzalo P. Curiel
                        Defendants.    | Date:    January 25, 2019
20                                     | Time:    1:30 p.m.
21                                     | Place:   Courtroom 2D
22                                     |          221 West Broadway
23                                     |          San Diego, CA 92101

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ...................................................................................ii

I.    PRELIMINARY STATEMENT .................................................... 1

II.   FACTUAL BACKGROUND ......................................................... 2

    A.   The Parties .......................................................................... 2

    B.   GOLO's Allegations ........................................................... 4

    C.   Procedural History .............................................................. 6

III.  STANDARD OF REVIEW ............................................................ 7

IV.   ARGUMENT ................................................................................. 7

    A.   GOLO's Lanham Act Claims (Counts I and II) Fail As A
          Matter Of Law For Multiple Reasons ................................. 7

         1.   GOLO Lacks Standing Under the Lanham Act ......... 8

         2.   GOLO Has Not Alleged Any Actionable Statements
               Under The Lanham Act ............................................. 10

         3.   The GOLO Review Is Not Commercial Speech ..................... 12

    B.   GOLO's Trade Libel Claim (Count III) Fails As A Matter Of
          Law For Multiple Reasons ................................................. 14

    C.   Any Claim GOLO Might Bring Arising Out Of The User
          Comments Is Barred By Section 230 Of The
          Communications Decency Act ........................................... 17

CONCLUSION .................................................................................... 18

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

5
*Ahmed v. Hosting.com*,
  28 F. Supp. 3d 82 (D. Mass. 2014) ...................................................................... 10

6
7
*Alfasigma USA, Inc. v. Nivagen Pharmaceuticals, Inc.*,
  2018 WL 4409350 (E.D. Cal. Sept. 17, 2018) ...................................................... 9

8
9
*Ariix, LLC v. NutriSearch Corp.*,
  2018 WL 1456928 (S.D. Cal. Mar. 23, 2018) ...................................................... 13

10
11
*Arno v. Club Med Inc.*,
  22 F.3d 1464 (9th Cir. 1994) ................................................................................ 15

12
13
*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ........................................................................................... 5, 7

14
15
*Avalos v. IAC/Interactivecorp.*,
  2014 WL 5493242 (S.D.N.Y. Oct. 30, 2014) ...................................................... 10

16
*Biolase, Inc. v. Fotona Proizvodnja Optoelektronskih Naprav D.D.*,
  2014 WL 12579802 (C.D. Cal. June 4, 2014)...................................................... 11

17
18
*Biro v. Conde Nast*,
  807 F.3d 541 (2d Cir. 2015) ................................................................................. 16

19
20
*Black Diamond Land Management LLC v. Twin Pines Coal Inc.*,
  707 Fed. App'x 576 (11th Cir. 2017) ..................................................................... 9

21
22
*Bobbleheads.com, LLC v. Wright Brothers, Inc.*,
  259 F. Supp. 3d 1087 (S.D. Cal. 2017) .................................................................. 9

23
24
*Brooks Power Systems, Inc. v. Ziff Communications, Inc.*,
  1994 WL 444725 (E.D. Pa. Aug. 17, 1994).......................................................... 15

25
26
*Coastal Abstract Service, Inc. v. First American Tile Insurance Co.*,
  173 F.3d 725 (9th Cir. 1999) ........................................................................... 12, 15

27
*Electronic Frontier Foundation v. Global Equity Management
  (SA) Pty Ltd.*,
  290 F. Supp. 3d 923 (N.D. Cal. 2017).................................................................. 14

28

ii

*Enigma Software Group USA LLC v. Malwarebytes Inc.*,
   2017 WL 5153698 (N.D. Cal. Nov. 7, 2017) .......................................... 18

*Fair Housing Council of San Fernando Valley v. Roommates.Com, LLC*,
   521 F.3d 1157 (9th Cir. 2008) ................................................................. 18

*Farah v. Esquire Magazine*,
   736 F.3d 528 (D.C. Cir. 2013) ................................................................. 12

*GOLO, LLC v. HighYa, LLC*,
   310 F. Supp. 3d 499 (E.D. Pa. 2018) ................................................. 13, 14

*Hal Roach Studios, Inc. v. Richard Feiner & Co.*,
   896 F.2d 1542 (9th Cir. 1989) ................................................................... 1

*Harte-Hanks Communications, Inc. v. Connaughton*,
   491 U.S. 657 (1989) ................................................................................ 17

*Homeland Housewares, LLC v. Euro-Pro Operating LLC*,
   2014 WL 6892141 (C.D. Cal. Nov. 5, 2014) .......................................... 15

*Hyperphrase Technologies, LLC v. Google, Inc.*,
   260 F. App'x 274 (Fed. Cir. 2007) ............................................................ 3

*Incyte Corp. v. Flexus Biosciences, Inc.*,
   2017 WL 7803923 (Del. Super. Ct. Nov. 1, 2017) ................................. 15

*Isuzu Motors Ltd. v. Consumers Union of U.S., Inc.*,
   12 F. Supp. 2d 1035 (C.D. Cal. 1998) ............................................... 15, 16

*Jankovic v. International Crisis Group*,
   822 F.3d 576 (D.C. Cir. 2016) ................................................................ 17

*Joseph v. Amazon.Com, Inc.*,
   46 F. Supp. 3d 1095 (W.D. Wash. 2014) ................................................ 18

*Kimzey v. Yelp! Inc.*,
   836 F.3d 1263 (9th Cir. 2016) ................................................................. 18

*Lexmark International, Inc. v. Static Control Components, Inc.*,
   572 U.S. 118 (2014) .................................................................................. 8

*Muldoon v. Tropitone Furniture Co.*,
   1 F.3d 964 (9th Cir. 1993) ....................................................................... 15

iii

*Newcal Industries, Inc. v. Ikon Office Solution*,
  513 F.3d 1038 (9th Cir. 2008) ............................................................. 12

*Oliver & Tate Enterprises Inc. v. Foundation Worldwide Inc.*,
  2014 WL 12595334 (C.D. Cal. Mar. 21, 2014) ................................... 14

*Ony, Inc. v. Cornerstone Therapeutics, Inc.*,
  720 F.3d 490 (2d Cir. 2013) ................................................................ 11

*Oxycal Laboratories, Inc. v. Inter-Cal Corp.*,
  909 F. Supp. 719 (S.D. Cal. 1995) ................................................. 11, 13

*Promotions, LLC v. Wright Brothers, Inc.*,
  2017 WL 1838943 (S.D. Cal. May 8, 2017) ......................................... 9

*Resolute Forest Products, Inc. v. Greenpeace International*,
  302 F. Supp. 3d 1005 (N.D. Cal. 2017) .............................................. 16

*Rice v. Fox Broadcasting Co.*,
  330 F.3d 1170 (9th Cir. 2003) ....................................................... 12, 13

*SB Diversified Products, Inc. v. Murchison*,
  2014 WL 3894353 (S.D. Cal. July 28, 2014) ................................. 14, 15

*Schatz v. Republican State Leadership Committee*,
  669 F.3d 50 (1st Cir. 2012) ................................................................ 16

*Southland Sod Farms v. Stover Seed Co.*,
  108 F.3d 1134 (9th Cir. 1997) ............................................................ 10

*Tobinick v. Novella*,
  848 F.3d 935 (11th Cir. 2017) ............................................................ 14

*TrafficSchool.com, Inc. v. Edriver Inc.*,
  653 F.3d 820 (9th Cir. 2011) ............................................................... 8

*Wall & Associates, Inc. v. Better Business Bureau of Central Va., Inc.*,
  685 F. App'x 277 (4th Cir. 2017) ......................................................... 9

*Wynn v. Chanos*,
  75 F. Supp. 3d 1228 (N.D. Cal. 2014) ................................................ 17

**Statutes**

47 U.S.C. Section 230 .......................................................................... 17

**Other Authorities**

Federal Rule of Civil Procedure 12(b)(6) ................................................................ 2

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    PRELIMINARY STATEMENT

In this lawsuit, GOLO, LLC – a marketer of a diet program (the "GOLO Diet") – has sued Higher Health Network, LLC ("HHN"), along with HHN's owner, Troy Shanks (collectively, "Defendants").  HHN is the publisher of Supplement Police, a product-review website focused primarily on reviewing supplements. GOLO's claims arise out of two reviews published on Supplement Police: one reviewing the GOLO Diet, and the other reviewing a health supplement called SilaLive Silica ("SilaLive").  The theory underlying the lawsuit is that Defendants have an undisclosed financial interest in SilaLive, and the review of the GOLO Diet was, accordingly, a covert attempt to boost sales of SilaLive by bashing the GOLO Diet.  Based on that theory, GOLO has brought claims for false advertising under the Lanham Act, as well as for trade libel.

As set forth in detail below, the Amended Complaint and exhibits thereto fail to provide *any* support for that theory.  The reviews themselves, which GOLO attached as Exhibits to its Amended Complaint, make clear that (a) Supplement Police's review of the GOLO Diet *recommended* the diet as "a cost-effective program," and did not mention SilaLive, or direct readers to its review of SilaLive, and (b) SilaLive is not promoted as a weight-loss product to which potential purchasers of the GOLO Diet could be diverted.[1]  Thus, the theory driving GOLO's lawsuit is implausible on its face.

GOLO's Amended Complaint should, accordingly, be dismissed in its entirety for the following reasons:

---

[1] While the general rule is that "a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion, . . . material which is properly submitted as part of the complaint may be considered."  *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1989).

1

1. the Lanham Act claims fail as a matter of law because (a) GOLO has not plausibly traced any commercial injuries to Defendants' alleged false advertising, which is a requisite for standing under the Lanham Act, (b) GOLO has not alleged any statement published by Defendants that is actionable under the Lanham Act, and (c) as to the review of the GOLO Diet in particular, GOLO has not adequately alleged that that review constitutes commercial speech, which it must be to be subject to a false advertising claim;

2. the trade libel claim fails as a matter of law because GOLO has not adequately alleged the required elements of (a) falsity, (b) pecuniary injury, or (c) actual malice; and

3. any claim GOLO might be asserting based on third-party comments left on the Supplement Police website is barred by Section 230 of the Communications Decency Act.

Thus, Defendants respectfully request that this Court dismiss the Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted.

## II.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### A.   The Parties

GOLO is a Delaware corporation, whose principal place of business is also in that state.  Am. Compl. ¶ 4, Jan. 10, 2018, Dkt. 18.  GOLO markets what it describes as a "leading weight loss and wellness program that aids people all over the world in achieving their weight loss goals in a sustainable and healthy manner." *Id.* ¶ 9.  GOLO's weight-loss program has three elements: a "meal plan," a "nutraceutical" supplement called the "Release," and various recommended "lifestyle behavior" changes.  *Id.* ¶¶ 12, 14, 16-18.  According to GOLO, its supplement "contains a proprietary blend of ingredients that work in conjunction with [the meal plan] to help manage glucose, insulin, and stress, in order to promote

2

steady and sustainable weight loss and minimize or eliminate muscle loss during the weight loss regimen." *Id.* ¶ 16.

Mr. Shanks is a resident of California. Am. Compl. ¶ 6; Order ("Sept. 26 Order") at 1, Sept. 26, 2018, Dkt. 28. He is the sole owner of HHN, which was originally an Indiana limited liability company, and is now registered in California, where it has its principal place of business. Am. Compl. ¶¶ 5, 7-8; Sept. 26 Order at 1. As relevant here, HHN is the publisher of Supplement Police, an online publication that offers reviews of hundreds of health, wellness and weight-loss supplements. Am. Compl. ¶¶ 34-35; *see also* https://supplementpolice.com (Supplement Police website). In addition to reviewing products, Supplement Police provides a forum for users to post their own comments about the products under review. Am. Compl. ¶ 59. Though, originally, Supplement Police generated revenue principally through "affiliate" relationships with various products, under which Supplement Police would receive a small commission for sales of certain products traceable to the Supplement Police website, increasingly, Supplement Police has relied on advertising revenue. *Id.* ¶ 37. Supplement Police's advertisements are placed exclusively through Google AdSense, with Supplement Police having no direct interaction with its advertisers. *Id.*[2]

---

[2] Google AdSense is a program used by content-based websites to place advertisements on their pages. As one court has explained: "AdSense is a service that coordinates advertiser content with contextually related webpages. Advertisers supply Google with online advertisements to display on the Internet via AdSense for a fee. Similarly, websites enroll in the AdSense service and allow AdSense to display such advertisements in exchange for fees from Google. When a user accesses a webpage on one of these websites, AdSense automatically scans the webpage's content. It reads all of the words on the page and conducts a statistical analysis of them" and then selects specific advertisements based on that analysis. *Hyperphrase Techs., LLC v. Google, Inc.*, 260 F. App'x 274, 276 (Fed. Cir. 2007). Thus, a website that uses AdSense for its advertisements plays no direct role in selecting its advertisers, which is done via the AdSense algorithm. In that way, the AdSense program essentially performs the function that the separation of business from editorial plays for larger publications.

3

## B.    GOLO's Allegations

Large portions of GOLO's Amended Complaint consist of allegations that are irrelevant to the claims asserted.  *See, e.g.*, Am. Compl. ¶¶ 25-29, 38-39 (alleging, *inter alia*, that Mr. Shanks has referred to himself as an "SEO genius," and that Supplement Police has not lived up to its boasts about "transparency").  The allegations actually relevant to GOLO's claims relate to two specific reviews published by Supplement Police: a review of SilaLive (the "SilaLive Review") and a review of the GOLO Diet (the "GOLO Review").  *Id.* ¶¶ 44-50, 52-58, Ex. B (SilaLive Review), Ex. C (GOLO Review).

As for the SilaLive Review, GOLO contends that the review's true purpose is to promote SilaLive at GOLO's expense.  *See, e.g.*, Am. Compl. ¶¶ 73-77, 82-85.  However, as GOLO's own allegations make clear, the SilaLive Review does *not* present it as a weight-loss product like the GOLO Diet.  Rather, the review describes it as a "health supplement" that promises to improve health "by safely flushing and eliminating harmful toxins and excess waste."  *Id.* ¶ 45.  Although GOLO asserts "[o]n information and belief" that the SilaLivew review "contains numerous false and/or misleading statements regarding SilaLive," and identifies two specific statements that it claims are false and/or misleading, it does not say what is false and/or misleading about either of those statements.  *Id.* ¶ 50.  Instead, GOLO's principal complaint appears to be that Mr. Shanks and HHN are supposedly affiliated with SilaLive, and that Supplement Police provided a "positive review" of that product without disclosing that fact.  *Id.* ¶¶ 44, 48-49.

As for the GOLO Review, while GOLO contends that it is "replete with inaccuracies, misleading statements, and blatant falsehoods," Am. Compl. ¶ 53, it identifies only two statements from the review that it contends are inaccurate:

- GOLO's Release Supplement should be taken "30 minutes before a meal" in order to "enjoy health benefits while also purportedly normalizing your insulin levels"; and

4

- "Out of all of the ingredients [in the Release Supplement], only Salacia has been linked to reduced diabetes symptoms. . . .  Meanwhile, none of the other ingredients in Release have been linked to weight loss or normalized insulin levels."

*Id.* ¶ 54.  GOLO does not say what specifically is inaccurate in either of those statements, or what the supposed truth really is.  In addition, GOLO asserts that "the GOLO Review includes bolded headlines that pose misleading questions which could cause readers to doubt GOLO's effectiveness and/or decide not to purchase GOLO," *id.* ¶ 55, but does not say what those supposedly "misleading questions" are, or how exactly they might divert business from GOLO.  And, while GOLO asserts that the GOLO Review was designed to dissuade readers from doing business with GOLO, the review itself was hardly negative.  In particular, the GOLO Review described GOLO as a "straightforward diet and fitness program that may reverse your prediabetes and help you lose weight," and summed up its assessment by stating "at this price range, GOLO appears to be a cost-effective program that outlines basic weight loss recommendations."  *Id.* Ex. C.  Defendants removed the GOLO Review in July 2017, after this action was filed.  *Id.* ¶ 67.

The central theory underlying GOLO's lawsuit is that Mr. Shanks and HHN used search-engine-optimization ("SEO") techniques to drive GOLO's potential customers to the GOLO Review, where they were then dissuaded from purchasing GOLO and directed to purchase SilaLive instead.  *See, e.g.*, Am. Compl. ¶¶ 68-71, 73, 78, 82, 85.[3]  GOLO propounds this theory even though (a) SilaLive was

---

[3] GOLO also alleges that Defendants used "the GOLO Review" as "a means of promoting" various unnamed "other products, programs, and plans Defendants are affiliated with, and/or receive compensation from." Am. Compl. ¶ 77; *see also id.* ¶¶ 73, 78, 82, 84 (same).  GOLO does not plead any specific facts in support of those allegations, and vague and conclusory allegations of that sort need not be credited at this stage.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) ("[A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.").

nowhere mentioned in, or promoted in connection with, the GOLO Review, (b) the GOLO Review *recommended* GOLO as "cost-effective" weight-loss program, and (c) SilaLive is not a weight-loss product and thus could not serve as a substitute for customers interested in the GOLO Diet. *See generally id.* Ex. B (SilaLive Review); *id.*, Ex. C (GOLO Review).

## C.    Procedural History

This action was filed in the District Court for the Eastern District of Pennsylvania in June 2017, where GOLO originally named Supplement Police, but not HHN or Mr. Shanks, as a defendant. Compl., June. 2, 2017, Dkt. 1. In December 2017, HHN, acting in its capacity as publisher of Supplement Police, moved to dismiss the action solely on jurisdictional grounds. Mot. to Dismiss, Dec. 20, 2017, Dkt. 17. In response, GOLO filed its Amended Complaint (which is now the operative pleading), in which it named Mr. Shanks and HHN as defendants. In its Amended Complaint, GOLO asserted claims for (a) unfair competition under 15 U.S.C. § 1125(a)(1)(B) of the Lanham Act based on the GOLO Review (Count I), (b) unfair competition under 15 U.S.C. § 1125(a)(1)(B) of the Lanham Act based on the SilaLive Review (Count II), and (c) trade libel (Count III). Am Compl. ¶¶ 72-95.

In March 2018, Mr. Shanks and HHN moved to dismiss the Amended Complaint solely on jurisdictional grounds. Mot. to Dismiss, Mar. 19, 2018, Dkt. 23. On September 26, 2018, the Pennsylvania District Court issued an order directing the parties "to show cause why the case should not be transferred to the Southern District of California, where Defendants reside." Sept. 26 Order at 2. On October 10, 2018, after receiving the parties' submissions, the Pennsylvania District Court entered an order transferring the case to this Court under 28 U.S.C. § 1406(a), based on its finding that "venue [wa]s improper" in the Eastern District of Pennsylvania. Order, Oct. 10, 2018, Dkt. 34. On November 2, 2018, this Court entered an order extending Defendants' time to "file an answer or other responsive pleading to Plaintiff's Amended Complaint" to November 20, 2018. Order, Nov. 2,

6

1 | 2018, Dkt. 39.

2 | ## III.   STANDARD OF REVIEW

3 | To survive a motion to dismiss under Rule 12(b)(6), a "complaint must
4 | contain sufficient factual matter, accepted as true, to 'state a claim to relief that is
5 | plausible on its face.'"  *Iqbal*, 556 U.S at 678 (quoting *Bell Atl. Corp. v. Twombly*,
6 | 550 U.S. 544, 570 (2007)).  Under this standard, "[t]hreadbare recitals of the
7 | elements of a cause of action, supported by mere conclusory statements, do not
8 | suffice" to avoid dismissal.  *Iqbal*, 556 U.S. at 678; *see also id.* at 678-79 (federal
9 | pleading standards do "not unlock the doors of discovery for a plaintiff armed with
10 | nothing more than conclusions").  Rather, a plaintiff must plead sufficient "factual
11 | content" to permit "the court to draw the *reasonable inference* that the defendant is
12 | liable for the misconduct alleged."  *Id.* at 678 (citing *Twombly*, 550 U.S. at 556)
13 | (emphasis added).

14 | ## IV.   ARGUMENT

15 | ### A.   GOLO's Lanham Act Claims (Counts I and II) Fail As A Matter
16 | ### Of Law For Multiple Reasons

17 | GOLO has brought two claims for false advertising under Section
18 | 1125(a)(1)(B) of the Lanham Act – one challenging the GOLO Review (Count I),
19 | and the other challenging the SilaLive Review (Count II).  Those claims fail for at
20 | least three reasons.  First, GOLO lacks standing to bring the claims, as it has not
21 | plausibly alleged (and cannot plausibly allege) a commercial injury arising out of
22 | either review.  Second, while GOLO has made various general allegations about the
23 | false and/or misleading nature of those reviews, it has failed to identify a single
24 | statement from either review that is actually actionable under the Lanham Act.
25 | Third, as to the GOLO Review in particular, GOLO has not adequately alleged that
26 | that review constitutes commercial speech, which it must be to be susceptible to a
27 | false advertising claim.

28 |

### 1.    GOLO Lacks Standing Under The Lanham Act

While Section 1125(a)(1)(B) of the Lanham Act creates a cause of action for false advertising, it does not deputize a plaintiff to act as a private Federal Trade Commission, challenging *any* allegedly false advertising regardless of its relationship to the plaintiff.  Rather, Section 1125(a)(1)(B) provides a cause of action only to a plaintiff that can show that the alleged false advertising caused consumers "to withhold trade from the plaintiff."  *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 133 (2014).  Thus, "[t]o invoke the Lanham Act's cause of action for false advertising, a plaintiff must plead (and ultimately prove) an injury to a commercial interest in sales or business reputation *proximately caused by the defendant's misrepresentations*."  *Id.* at 140 (emphasis added).  GOLO has not done so.

This is most apparent with respect to GOLO's claim based on the SilaLive Review (Count II).  The crux of GOLO's complaint is that the review is presented as if it were neutral and objective, when (according to GOLO) Mr. Shanks and HHN have undisclosed business interests in that product.  *See, e.g.*, Am. Compl. ¶¶ 44-49, 73-74, 82-84.  Even accepting the truth of that allegation for these limited purposes, that has nothing to do with GOLO, or any commercial injury it may have suffered.  As is clear on the face of the Amended Complaint, SilaLive is not a weight-loss product, and does not compete with GOLO in the marketplace.  *See generally id.* ¶¶ 45-46, 50, Ex. B.  Accordingly, this is not a case where GOLO can help itself to the presumption that anything that commercially benefits SilaLive would commercially harm it, as it could if the products were engaged in zero-sum competition against each other.  *See Lexmark*, 572 U.S. at 136 (noting that "a plaintiff who does not compete with the defendant will often have a harder time establishing proximate causation"); *TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 827 (9th Cir. 2011) (when a "plaintiff competes directly with defendant, a misrepresentation will give rise to a presumed commercial injury that is sufficient to establish standing").

8

1   Thus, even assuming that the SilaLive Review contains false and/or misleading

2   positive statements about SilaLive, GOLO lacks standing to challenge them.

3          The same goes for GOLO's challenge to the GOLO Review (Count I).

4   That claim is tied to GOLO's overarching theory that Defendants, through clever

5   employment of SEO, "us[ed] Supplement Police's website in general, and the

6   GOLO Review in particular" to "direct diversion of sales from GOLO to SilaLive."

7   Am. Compl. ¶¶ 73, 78.  That theory is fatally undermined by the fact that (a) the

8   GOLO Review did not mention SilaLive, or otherwise direct readers to the page

9   hosting the SilaLive review, (b) far from diverting readers *away* from the GOLO

10  Diet, the GOLO Review *recommended* GOLO as "cost-effective" weight-loss

11  program, and (c) SilaLive is not a weight-loss product, and, therefore, no customer

12  looking for GOLO would be diverted into accepting SilaLive as a substitute.

13         In short, GOLO has failed to plausibly allege a commercial injury caused by

14  either the SilaLive Review or the GOLO Review, and its Lanham Act claims should

15  be dismissed on that basis.  *See, e.g.*, *Bobbleheads.com, LLC v. Wright Brothers,*

16  *Inc.*, 259 F. Supp. 3d 1087, 1097 (S.D. Cal. 2017) (dismissing Lanham Act claim

17  where plaintiff alleged false advertising and an injury, but did not allege any

18  plausible theory connecting the two); *Plan P2 Promotions, LLC v. Wright Brothers,*

19  *Inc.*, 2017 WL 1838943, at *5 (S.D. Cal. May 8, 2017) (same).[4]

20  _____

21       [4] Other courts applying *Lexmark* have likewise dismissed Lanham Act claims
     at the motion-to-dismiss stage where the plaintiff failed to plead facts plausibly
22   connecting its asserted commercial injury to the alleged violations of the statute.
     *See, e.g.*, *Wall & Assocs., Inc. v. Better Bus. Bureau of Cent. Va., Inc.*, 685 F. App'x
23   277, 279 (4th Cir. 2017) (affirming dismissal of Lanham Act claim brought against
     consumer-review publication where plaintiff did "not identify a single consumer
24   who withheld or canceled business with it or pointed to a particular quantum of
     diverted sales or loss of goodwill and reputation resulting directly from reliance on
25   any false or misleading representations by [d]efendants"); *Black Diamond Land*
     *Mgmt. LLC v. Twin Pines Coal Inc.*, 707 Fed. App'x 576, 580-81 (11th Cir. 2017)
26   (affirming dismissal of Lanham Act claim where plaintiff alleged that it "'will
     continue to be damaged by [d]efendants' false statements,'" but did not "provide
27   any factual support for how or why such an injury to a commercial interest has or
     will occur"); *Alfasigma USA, Inc. v. Nivagen Pharm., Inc.*, 2018 WL 4409350, at *6
28

9

## 2.      GOLO Has Not Alleged Any Actionable Statements Under The Lanham Act

Even if GOLO did have standing to assert its Lanham Act claims, those claims would still fail because GOLO has not identified any actually actionable statements by Defendants.  To state a claim for false advertising under the Lanham Act, a plaintiff must allege, *inter alia*, "(1) a false statement of fact by the defendant in a commercial advertisement about its own or another's product; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience, [and] (3) the deception is material in that it is likely to influence the purchasing decision."  *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997).  GOLO has not met these requirements.

As for the GOLO Review, while GOLO makes a number of vague and conclusory allegations regarding "inaccuracies, misleading statements, and blatant falsehoods" in that review, *see* Am. Compl. ¶¶ 53, 55, 75, it identifies only two statements it contends were false and/or misleading:

> **STATEMENT 1**:  GOLO's Release Supplement should be taken "30 minutes before a meal" in order to "enjoy health benefits while also purportedly normalizing your insulin levels"; and
>
> **STATEMENT 2**: "Out of all of the ingredients [in the Release Supplement], only Salacia has been linked to reduced diabetes symptoms.  Meanwhile, none of the other ingredients in Release have been linked to weight loss or normalized insulin levels."

---

(E.D. Cal. Sept. 17, 2018) (dismissing federal false advertising claim where plaintiff did not "adequately allege" harm); *Avalos v. IAC/Interactivecorp.*, 2014 WL 5493242, at *5 (S.D.N.Y. Oct. 30, 2014) (dismissing Lanham Act false advertising claim where "[t]he Complaint . . . provide[d] no factual support for . . . conclusory allegation of harm to [plaintiff].'"); *Ahmed v. Hosting.com*, 28 F. Supp. 3d 82, 91 (D. Mass. 2014) (dismissing Lanham Act claim where complaint "state[d] no facts establishing . . . commercial injury caused by the alleged [trademark] infringement").

*Id.* ¶ 54.  For Statement 1, GOLO does not say what is false and/or misleading about it.  Moreover, even if it is *not* true that the Release supplement must be "taken '30 minutes before a meal'" to enjoy its claimed benefits, GOLO fails to explain how stating otherwise have a material influence on customers' purchasing decisions, which is also a requirement for a statement to be actionable under the Lanham Act.

For Statement 2, GOLO once again does not say what is false and/or misleading about it.  Presumably, GOLO's position is that, in fact, more Release ingredients than just "Salacia" have been linked to "weight loss or normalized insulin levels."  Even assuming that that is what GOLO intended to allege, that would not make the statement actionably false and/or misleading under the Lanham Act.  Exactly what ingredients in the Release have or have not been adequately or reputably linked to "weight loss or normalized insulin levels" is a matter of scientific debate.  It is not the business of a court to "inquir[e] into the validity of scientific theories."  *Oxycal Labs., Inc. v. Inter-Cal Corp.*, 909 F. Supp. 719, 724 (S.D. Cal. 1995).  Accordingly, a false advertising claim cannot be premised on a defendant's taking the (allegedly) wrong side in a matter of scientific controversy.  *See Ony, Inc. v. Cornerstone Therapeutics, Inc.*, 720 F.3d 490, 497-498 (2d Cir. 2013) (drawing conclusions "on subjects about which there is legitimate ongoing scientific disagreement" is not "grounds for a claim of false advertising under the Lanham Act"); *Biolase, Inc. v. Fotona Proizvodnja Optoelektronskih Naprav D.D.*, 2014 WL 12579802, at *4-5 (C.D. Cal. June 4, 2014) (same).

As to the SilaLive Review, GOLO has likewise only identified two statements that it alleges are false and/or misleading: "that SilaLive is 'formulated with the greatest quartz crystals,' and that its main ingredient 'will help you fight [common health] problems from the inside and thus give you a healthier, more permanent solution that artificial cures cannot promise you."  Am. Compl. ¶ 50.  Once again, GOLO does not explain (a) what is false and/or misleading about either of those statements, (b) how those two statements have a tendency to deceive, or (c) how

11

anything false and/or misleading in those statements would be material to any purchasing decisions.

Moreover, statements like these, which tout the benefits of a product in effusive and general terms, constitute "puffery," which cannot support a claim for false advertising.  As the Ninth Circuit has explained, "the difference between a statement of fact and mere puffery rests in the specificity or generality of the claim." *Newcal Indus., Inc. v. Ikon Office Solution*, 513 F.3d 1038, 1053 (9th Cir. 2008). Accordingly, "a statement that is quantifiable, that makes a claim as to the specific or absolute characteristics of a product, may be an actionable statement of fact[,] while a general, subjective claim about a product is non-actionable puffery."  *Id.* (internal quotation marks omitted); *see also Coastal Abstract Serv., Inc. v. First Am. Tile Ins. Co.*, 173 F.3d 725, 730 (9th Cir. 1999) (same).  The statements at issue here – *i.e.*, that the supplement is "formulated with the *greatest* quartz crystals," and will "give you a *healthier, more permanent* solution that artificial cures cannot promise you" – clearly fall on the "puffery" side of this line.  *See, e.g.*, *Newcal*, 513 F.3d at 1052-53 ("general assertion that [defendant] provides its customers with low costs and with flexibility" was mere puffery).

In sum, GOLO has not identified any statements by Defendants that are actionable under the Lanham Act.  Its Lanham Act claims are, accordingly, subject to dismissal on this ground as well.

### 3.     The GOLO Review Is Not Commercial Speech

Finally, GOLO's false advertising claim as to the GOLO Review fails for an additional reason – that review does not constitute commercial speech.  In order for statements about a product to constitute "commercial advertising" within the meaning of the Lanham Act, those statements must be, *inter alia*, "commercial speech."  *Rice v. Fox Broad. Co.*, 330 F.3d 1170, 1181 (9th Cir. 2003); *see also Farah v. Esquire Magazine*, 736 F.3d 528, 541 (D.C. Cir. 2013) ("[e]very circuit court of appeals to address the scope of" Section 1125(a) has held that it only

applies "to commercial speech"). "The core notion of commercial speech is 'speech which does no more than propose a commercial transaction.'" *Rice*, 330 F.3d at 1181 (quoting *City of Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 422 (1993)). In this case, GOLO has not identified anything in the GOLO Review that would make that review commercial speech.

As a general matter, "the Lanham Act doesn't apply to reviews of consumer products, even if they are alleged to be biased, inaccurate, or tainted by favoritism." *Ariix, LLC v. NutriSearch Corp.*, 2018 WL 1456928, at *3 (S.D. Cal. Mar. 23, 2018). GOLO tries to get around that by alleging that the GOLO Review was really a vehicle for promoting SilaLive and various unnamed "other products, programs, and plans Defendants are affiliated with, and/or receive compensation from." Am. Compl. ¶ 77. That general and conclusory allegation is insufficient. As to SilaLive, while GOLO has adequately alleged that Defendants have a commercial interest in that product, it has not adequately alleged any connection between that commercial interest and the GOLO Review, which did not mention SilaLive or link to the SilaLive Review. Thus, even conceding for these limited purposes that the SilaLive Review qualifies as commercial speech, that does not transform everything that appears on the Supplement Police website, no matter how remote its connection to SilaLive, into commercial speech. *See, e.g.*, *GOLO, LLC v. HighYa, LLC*, 310 F. Supp. 3d 499, 507 (E.D. Pa. 2018) (that product review website had affiliate relationship with exercise product did not render its review of GOLO Diet commercial speech); *Oxycal Labs.*, 909 F. Supp. at 725 (that book describing alleged cures for cancer contained an appendix promoting certain products did not render entire book commercial speech).

GOLO's position is no stronger with respect to Defendants' supposed use of the GOLO Review to promote "other products, programs, and plans Defendants are affiliated with, and/or receive compensation from." The only actual fact GOLO pleads in support of that contention is to point to the presence of advertisements for

13

other products on the page hosting the GOLO Review. *See* Am. Compl. ¶¶ 56-57. But, displaying paid advertisements alongside informational content, which is something virtually *every* for-profit publication does, does not render that informational content commercial speech. *See, e.g.*, *Tobinick v. Novella*, 848 F.3d 935, 952 (11th Cir. 2017) (blog posts criticizing plaintiff's medical practice were not commercial speech, notwithstanding that publisher made a profit from selling advertising space); *GOLO*, 310 F. Supp. 3d at 504-05 (same as applied to a product-review website).

The GOLO Review is not subject to a false advertising claim because it is not commercial speech. Count I is subject to dismissal on that additional ground as well.

## B. Golo's Trade Libel Claim (Count III) Fails As A Matter Of Law For Multiple Reasons

Under California law, a cause of action for trade libel requires "a false statement of fact that disparages plaintiff's product and causes pecuniary loss." *Oliver & Tate Enters. Inc. v. Found. Worldwide Inc.*, 2014 WL 12595334, at *4 (C.D. Cal. Mar. 21, 2014); *see also SB Diversified Prods., Inc. v. Murchison*, 2014 WL 3894353, at *9 (S.D. Cal. July 28, 2014) (same). In addition, a plaintiff asserting such a claim must plead and prove that the allegedly false and libelous statements were published with "actual malice," *i.e.*, that, at the time of publication, the publisher knew the statements were false, or else strongly suspected they were false and published them anyway. *Elec. Frontier Found. v. Global Equity Mgmt. (SA) Pty Ltd.*, 290 F. Supp. 3d 923, 945-46 (N.D. Cal. 2017) (citing *Melaleuca, Inc. v. Clark*, 78 Cal. Rptr. 2d 627, 630 (Cal. Ct. App. 1998)). Here, GOLO has not adequately alleged (a) falsity, (b) pecuniary loss, or (c) actual malice.[5]

---

[5] GOLO appears to want Pennsylvania law to apply to its trade libel claim, as its Amended Complaint asserted a trade libel claim specifically under "Pennsylvania Common Law." *See* Count III. However, Pennsylvania law and California law do not materially differ as to the requirements for establishing a trade libel claim, at least with regard to the elements on which GOLO's pleading is deficient (*i.e.*, falsity, pecuniary loss, and actual malice). Pennsylvania law also requires a plaintiff

14

As for falsity, as noted above, GOLO failed, with respect to its false advertising claim, to adequately allege that anything in the GOLO Review is actionably false. *See supra*, at 10-11.  That dooms its trade libel claim as well.  *See, e.g.*, *Coastal Abstract*, 173 F.3d at 732 (statements that were not actionably false for purposes of false advertising claim also could not support libel claim).

As for pecuniary loss, that element requires a plaintiff to "specifically plead special damages." *Isuzu Motors Ltd. v. Consumers Union of U.S., Inc.*, 12 F. Supp. 2d 1035, 1047 (C.D. Cal. 1998).  That means, at a minimum, alleging "facts showing an established business, the amount of sales for a substantial period preceding the publication, the amount of sales subsequent to the publication, [and] facts showing that such loss in sales were the natural and probable result of such publication." *Id.* (quoting *Fowler v. Curtis Publ'g Co.*, 182 F.2d 377, 379 (D.C. Cir. 1950)).  Here, GOLO's merely alleges that "Defendants' false and defamatory statements have severely injured GOLO, in that they have tended to blacken and besmirch GOLO's reputation." Am. Compl. ¶ 92.  That plainly does not suffice. *See, e.g.*, *Homeland Housewares, LLC v. Euro-Pro Operating LLC*, 2014 WL 6892141, at *4 (C.D. Cal. Nov. 5, 2014) (dismissing trade libel claim because "Plaintiffs' general statements of economic loss and bare statement for relief . . . do not sufficient identify special damages"); *SB Diversified*, 2014 WL 3894353, at *9

asserting a trade libel claim to plead and prove: (1) a "false" statement that (2) caused "pecuniary loss," and (3) that "the publisher either kn[ew] that the statement is false or act[ed] in reckless disregard of its truth or falsity (actual malice)." *Brooks Power Sys., Inc. v. Ziff Commc'ns, Inc.*, 1994 WL 444725, at *2 (E.D. Pa. Aug. 17, 1994).  Delaware, which is GOLO's state of residence and incorporation, aligns with Pennsylvania law on the elements of a trade libel claim. *See Incyte Corp. v. Flexus Biosciences, Inc.*, 2017 WL 7803923, at *7 (Del. Super. Ct. Nov. 1, 2017) (relying on Pennsylvania case law to recite the elements of a trade libel claim). Accordingly, it is not necessary to determine which state's law applies. *See, e.g.*, *Arno v. Club Med Inc.*, 22 F.3d 1464, 1467 (9th Cir. 1994) (where "the two states' laws" do not "actually differ," a choice-of-law analysis is unnecessary); *see also Muldoon v. Tropitone Furniture Co.*, 1 F.3d 964, 967 (9th Cir. 1993) (where, as here, a case has been transferred pursuant to 28 U.S.C. § 1406(a), the choice-of-law rules of the transferee district apply).

15

(dismissing trade libel claim where plaintiff did "nothing more than declare that defendant's purported statements caused it 'pecuniary harm,' through 'loss of sales,'" and noting that "California district courts have consistently dismissed trade libel claims when special damages are not pled specifically"); *Isuzu Motors*, 12 F. Supp. 2d at 1047 (dismissing trade libel claim on ground that "[a] bare allegation of the amount of pecuniary loss alleged is insufficient"). Thus, GOLO has failed to adequately plead commercial loss.

Finally, as to actual malice, under the pleading rules established in *Iqbal* and *Twombly*, a plaintiff is required to "plausibly . . . allege actual malice" in order to avoid dismissal where actual malice is an element of the claim. *Resolute Forest Prods., Inc. v. Greenpeace Int'l*, 302 F. Supp. 3d 1005, 1027-28 (N.D. Cal. 2017) (citing cases). That means that a plaintiff cannot rely simply on "actual-malice buzzwords," *Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 56 (1st Cir. 2012), but must plead "plead 'plausible grounds' to infer actual malice by alleging 'enough *fact[s]* to raise a reasonable expectation that discovery will reveal evidence of' actual malice." *Biro v. Conde Nast*, 807 F.3d 541, 546 (2d Cir. 2015) (quoting *Twombly*, 550 U.S. at 556).

Here, GOLO has pleaded no facts that, if proven, could plausibly support its conclusory assertion that "[a]t the time Defendants published the above-mentioned statements, they knew the statements concerning GOLO were totally false, or, if not, Defendants' avoidance of truth was in utter and reckless disregard of their truth or falsity." Am. Compl. ¶ 91. The closest GOLO comes to pleading any theory of actual malice is in its allegation that Defendants "publish[ed] false, misleading, and defamatory statements regarding GOLO" in order to benefit products in which they supposedly have a financial stake. *Id.* ¶ 73. As set forth above, the theory that the GOLO Review was used by Defendants as a vehicle for promoting other products at GOLO's expense is fundamentally implausible. *See supra*, at 9. But, even if the theory *were* plausible, a theory about a publisher's supposed ulterior motive is not a

16

theory of actual malice.  As the Supreme Court has explained, the fact that allegedly false and defamatory material was published "in order to increase [] profits" does not "suffice to prove actual malice."  *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 667 (1989); *see also Jankovic v. Int'l Crisis Grp.*, 822 F.3d 576, 596 (D.C. Cir. 2016) ("[T]he mere presence of some ulterior motive – whether a profit motive, a motive to produce the most interesting stories, or a personal desire to harm the subject of a story – is not enough to support a finding of actual malice."). Instead, a plaintiff must plead additional facts plausibly connecting that alleged economic motivation to the publisher's pre-publication knowledge, or strong suspicion, that what was published was false.  *See, e.g.*, *Wynn v. Chanos*, 75 F. Supp. 3d 1228, 1239 (N.D. Cal. 2014) (actual malice was inadequately pleaded where plaintiff failed to "provide any specific allegations that would support a finding" that defendant knew its assertions were false, or "harbored serious subjective doubts" as to their validity).  That is what is missing here.  Thus, GOLO has likewise failed to plead actual malice.

GOLO has not adequately alleged falsity, pecuniary injury, or actual malice, each of which is a required element of trade libel claim.  Its trade libel claim is, accordingly, subject to dismissal on each of those grounds.

### C.  Any Claim GOLO Might Bring Arising Out Of The User Comments Is Barred By Section 230 Of The Communications Decency Act

GOLO's Amended Complaint includes a number of allegations regarding the user comments posted underneath the GOLO Review.  *See* Am. Compl. ¶¶ 59-65. It is not clear whether GOLO intends to hold Defendants liable for false advertising and/or trade label based on those user comments, or whether the details about those comments were included just for atmospheric reasons.  Regardless, any such claim would be barred by Section 230 of the Communications Decency Act of 1996, 47 U.S.C. § 230(c) ("Section 230").

17

Section 230 "immunizes providers of interactive computer services against liability arising from content created by third parties." *Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC*, 521 F.3d 1157, 1162 (9th Cir. 2008) (en banc). Subject to limited exceptions not relevant here, under Section 230, a "website operator" that "passively displays content that is created entirely by third parties" is immune from any liability arising out of the nature of that third-party content. *Id.* at 1162; *see also Kimzey v. Yelp! Inc.*, 836 F.3d 1263, 1270 (9th Cir. 2016) ("Yelp is immune from liability under the CDA for positing user-generated content on its own website").

Here, GOLO's complaint about Defendants' conduct regarding the user comments is precisely that Supplement Police "passively displays" those comments, and does not "screen" them, or otherwise prevent "readers [from] post[ing] whatever they desire." Am. Compl. ¶ 64. Whatever sympathy one may have with GOLO's frustrations, Section 230 unambiguously bars any claim for false advertising or trade liable based on such conduct. *See, e.g.*, *Enigma Software Grp. USA LLC v. Malwarebytes Inc.*, 2017 WL 5153698, at *3 (N.D. Cal. Nov. 7, 2017) (Section 230 barred claim for false advertising under Lanham Act), *appeal filed*, No. 17-17351 (9th Cir. Nov. 21, 2017); *Joseph v. Amazon.Com, Inc.*, 46 F. Supp. 3d 1095, 1105-06 (W.D. Wash. 2014) (Section 230 barred trade libel claim based on user reviews). Thus, to the extent that GOLO is asserting any claims based on the user comments, those claims fail as a matter of law.

////

////

////

////

////

////

////

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## V.   CONCLUSION

For the foregoing reasons, the Amended Complaint should be dismissed with prejudice pursuant to Rule 12(b)(6).

DATED:  November 20, 2018               BALLARD SPAHR LLP

*/s/ Scott S. Humphreys*

Scott S. Humphreys
Paul J. Safier (pro hac vice application
pending)

*Attorneys for Defendants*
*HIGHER HEALTH NETWORK, LLC*
*and TROY SHANKS*

19