UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GOLO, LLC,<br><br>                              Plaintiff,<br><br>v.<br><br>HIGHER HEALTH NETWORK, LLC,<br>and TROY SHANKS,<br><br>                              Defendants. | Case No.:  3:18-cv-2434-GPC-MSB<br><br>**ORDER:**<br><br>**GRANTING DEFENDANTS'**<br>**MOTION TO DISMISS AMENDED**<br>**COMPLAINT FOR FAILURE TO**<br>**STATE A CLAIM**<br><br>**[ECF No. 45]**<br><br>**DENYING DEFENDANTS' SPECIAL**<br>**MOTION TO STRIKE PURSUANT**<br>**TO CAL. CODE CIV. PROC. § 425.16**<br><br>**[ECF No. 46]** |

Before the Court is Defendants' Motion to Dismiss Amended Complaint for Failure to State a Claim and also Defendants' Special Motion to Strike pursuant to Cal. Code Civ. Proc. § 425.16.  ECF Nos. 45, 46.  Plaintiff GOLO, LLC, sells a weight loss program.  GOLO also offers a proprietary supplement to help promote weight loss. Defendants published a review of this supplement, but GOLO alleges that this review was replete with inaccuracies, misleading statements, and blatant falsehoods.

1

Accordingly, GOLO advances claims under federal and state law against Defendants for their allegedly false statements.

Defendants move to dismiss GOLO's claims on the basis that GOLO has failed to state a plausible claim for relief. Defendants also move to strike GOLO's state law trade libel claim under California's anti-strategic lawsuit against public participation ("anti-SLAPP") statute. For the reasons set forth below, the Court finds that GOLO has not sufficiently pleaded its claims. The Court will **GRANT** Defendants' motion to dismiss. Furthermore, because Defendants have not carried their initial burden of making a prima facie showing that GOLO's claim arises from an act in furtherance of Defendants' right of petition or free speech in connection with a public issue, the Court will **DENY** Defendants' special motion to strike.

# I. BACKGROUND

A.     GOLO's Amended Complaint

Plaintiff GOLO, LLC, filed its Amended Complaint against two Defendants: Troy Shanks and Higher Health Network, LLC, d/b/a Supplement Police and/or SupplementPolice.com f/k/a Higher Health Foundation Ltd. ("HHN"). Am. Compl. at 1, ECF No. 18. Shanks is the owner of HHN. *Id.* ¶ 7.

1.     GOLO

GOLO owns and sells a weight loss program named GOLO ("GOLO Program"). *Id.* ¶ 9. GOLO Program promotes weight loss with: 1) dietary modification; 2) regular exercise; and 3) nutraceutical supplementation. *Id.* ¶ 12. GOLO Program is offered through GOLO's membership-based website. *Id.* ¶ 14. This website provides members access to health coaching, member support, and a health library. *Id.*

As to dietary medication, the GOLO Diet employs a specific, customized meal plan. *Id.* ¶ 17. GOLO's website provides members the opportunity to purchase GOLO Release, which is GOLO's proprietary supplement. *Id.* ¶ 14. GOLO Release contains a proprietary blend of ingredients that work in conjunction with the GOLO Diet to help

manage glucose, insulin, and stress, in order to promote weight loss and minimize muscle loss during the weight loss regimen. *Id.* ¶ 16.

### 2. Shanks and HHN

According to the Amended Complaint, "Shanks and HHN compete with GOLO in the diet and weight-loss industry." *Id.* ¶ 24. Shanks is an entrepreneur and marketer who, either individually or through one of his companies, owns and operates websites and internet-based enterprises. *Id.* ¶ 25. Shanks specializes in search engine optimization ("SEO"), which optimizes a website's visibility in search engines. *Id.* ¶ 27. YouTube videos describe Shanks as an "SEO genius" who can generate significant amounts of traffic to internet-based businesses. *Id.* ¶ 28.

To further his internet-based business interests, Shanks formed a series of companies, including HHN. *Id.* ¶ 30. The Amended Complaint alleges, on information and belief, that HHN and Shank's other companies are pass-through corporations "used primarily as a vehicle for enriching Shanks personally." *Id.* ¶ 31. Shanks, either individually or through HHN, has purchased and created dozens of information websites that generate revenue exclusively through advertising sales. *Id.* ¶¶ 32-33.

### 3. Supplement Police

SupplementPolice.com is one of the informational websites that Shanks owns and operates through HHN. *Id.* ¶ 34. Supplement Police claims to be a "product review website" aiming to introduce "honesty and transparency to the world of online reviews" through "detailed reviews of popular products" such as nutritional supplements. *Id.* ¶ 35. Supplement Police also claims that it provides "intelligent" reviews of such products from real customers, without any bias or favoritism. *Id.* ¶ 36. Supplement Police alleges that it "doesn't currently accept affiliate income from any company in exchange for favorable reviews – instead, it makes it money exclusively from [Google] AdSense revenue." *Id.* ¶ 37.

The Amended Complaint alleges that on information and belief, Supplement Police's reviews are "predominantly bogus," not based on any testing or analysis

conducted by Supplement Police, biased, and designed solely to benefit Defendants rather than the public. *Id.* ¶¶ 40-42.  The Amended Complaint further alleges on information and belief that Supplement Police provides significant financial benefits to and a competitive advantage for Defendants by promoting and linking to products Defendants are affiliated with, manufacture, and/or sell. *Id.* ¶ 43.

### 4.  SilaLive

Supplement Police provides a positive review of SilaLive Silica. *Id.* ¶ 44. Supplement Police asserts that SilaLive is a "health supplement combining organic silica and pure food grade diatomaceous earth designed specifically to health the human body by safely flushing and eliminating harmful toxins and excess waste." *Id.* ¶ 45.  SilaLive can be used to improve overall health, help "detox," or kickstart a diet. *Id.*  Supplement Police gave SilaLive an overall score of 4.6 out of 5 and asserts that it is clearly a product that works for a lot of people. *Id.* ¶ 46.

In its review, Supplement Police provides multiple links to the SilaLive website, where consumers can purchase the supplement. *Id.* ¶ 47.  Supplement Police readers are not informed that Shanks and HHN are affiliated with, and manufacture, distribute, and/or sell SilaLive, and own and/or operate the SilaLive website. *Id.* ¶ 48.  Rather, Supplement Police actively hides its association with SilaLive, Shanks, and HHN. *Id.* ¶ 49.  The Amended Complaint alleges that Supplement Police's review of SilaLive contains false statements, including that SilaLive is "formulated with the greatest quartz crystals" and that its main ingredient will help fight common health problems "from the inside," giving a healthier more permanent solution that artificial cures cannot promise. *Id.* ¶ 50.

### 5.  Supplement Police's GOLO Review

In 2016, Supplement Police published on its website a review of GOLO Release titled, "GOLO – Insulin Resistance for Weight Loss?" *Id.* ¶ 52.

> [T]he GOLO Review inaccurately describes how GOLO was created, as well as what GOLO "promises," and falsely states that:

GOLO's Release Supplement should be taken "30 minutes before a meal" in order to "enjoy health benefits while also purportedly normalizing your insulin levels"; and

"Out of all of the ingredients listed [in the Release Supplement], only Salacia bark has been linked to reduced diabetes symptoms . . . Meanwhile, none of the other ingredients in Release have been linked to weight loss or normalized insulin levels."

*Id.* ¶ 54.

Moreover, "the GOLO Review includes bolded headlines that pose misleading questions which would cause readers to doubt GOLO's effectiveness and/or decide not to purchase GOLO." *Id.* ¶ 55.

B.    Procedural History

1.    Pleadings

On June 2, 2017, GOLO filed its Complaint in the Eastern District of Pennsylvania. Compl., ECF No. 1. On January 10, 2018, GOLO filed an Amended Complaint in the Eastern District of Pennsylvania. Am. Compl., ECF No. 18. The Amended Complaint advances three claims against Defendants.

Count I brings a claim for Unfair Competition and False Advertising under 15 U.S.C. § 1125 of the Lanham Act as to GOLO. *Id.* at 12. GOLO claims that Defendants' publication of false statements regarding GOLO, praising SilaLive and other products Defendants are affiliated with, and directing readers to SilaLive and those other products constitutes unfair competition and/or false advertising. *Id.* GOLO claims that it has been injured as a result of Defendants' false statements, either by direct diversion of sales from GOLO to SilaLive and Defendants' other affiliated products, the costs to GOLO for corrective advertising to counteract Defendants' misrepresentations, or by a lessening of the goodwill associated with GOLO's goods and services. *Id.* ¶ 78.

Count II brings an Unfair Competition and False Advertising Lanham Act claim pursuant to 15 U.S.C. § 1125 as to SilaLive and affiliated products, programs, and plans. This count alleges Defendants made false statements about SilaLive and Defendants' other affiliated products. *Id.* at ¶ 82. GOLO claims that it has been injured either by

direct diversion of sales or by a lessening of goodwill.  *Id.* ¶ 85.  In Count III, GOLO

brings a claim for trade libel under "Pennsylvania common law."  *Id.* ¶¶ 88-95.  This

claim alleges that Defendants made false statements concerning GOLO.  *Id.*

2. <u>Transfer of Venue</u>

On September 26, 2018, the district court entered an order to show cause why the

case should not be transferred to the Southern District of California.  Order, ECF No. 28.

The court noted that GOLO is a Delaware corporation with its principal place of business

in Delaware, Shanks resides in California, and HHN is a California corporation with its

principal place of business in California.  Moreover, the court stated that GOLO had not

shown that this action has a greater connection to the Eastern District of Pennsylvania

than to any other venue.  The court ordered the parties to show cause why the case should

not be transferred to the Southern District of California, where Defendants reside.

On October 10, 2018, the district court entered an order transferring this case to the

Southern District of California.  Order, ECF No. 34.  The district court noted that under

28 U.S.C. § 1406(a), where venue is improper, a district court "shall dismiss, or if it be in

the interest of justice, transfer such case to any district or division in which it could have

been brought."  The court found that no Defendant resides in Pennsylvania and GOLO

had not shown that this case has a greater connection to the Eastern District of

Pennsylvania than to any other venue in the United States.  The district court found that

venue was improper in the Eastern District of Pennsylvania, and transferred this case to

the Southern District of California.

3. <u>Defendants' Motion to Dismiss and Anti-SLAPP Motion</u>

Defendants have filed two motions that are presently before the Court.  First,

Defendants move to dismiss the Amended Complaint on the basis that it fails to state a

claim for relief.  With respect to GOLO's two Lanham Act claims, Defendants contend

that GOLO has failed to plausibly allege a commercial injury, a false or misleading

statement, and that the review constitutes commercial speech.  As to GOLO's trade libel

claim, Defendants assert that GOLO has not adequately alleged falsity, pecuniary loss, or actual malice.

Defendants also bring a special motion to strike GOLO's state law trade libel claim pursuant to California's anti-SLAPP statute. Defendants argue that California's anti-SLAPP law applies to this case because of California's strong policy of protecting its residents from lawsuits targeting speech on matters of public interest. Defendants contend that GOLO's claim falls within the purview of the anti-SLAPP law because Defendants' review was published in a public forum and involved speech on a matter of public interest. Finally, Defendants contend that GOLO cannot demonstrate a probability of prevailing on its trade libel claim.

## II. DISCUSSION

A.   <u>Legal Standard</u>

    1.   <u>Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6)</u>

A motion to dismiss under Federal Rule of Civil Procedure ("Rule") 12(b)(6) tests the sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal is warranted under Rule 12 (b)(6) where the complaint lacks a cognizable legal theory. *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984); *see also Neitzke v. Williams*, 490 U.S. 319, 326 (1989) ("Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law."). Alternatively, a complaint may be dismissed where it presents a cognizable legal theory yet fails to plead essential facts under that theory. *Robertson*, 749 F.2d at 534. While a plaintiff need not give "detailed factual allegations," a plaintiff must plead sufficient facts that, if true, "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 547). A claim is facially plausible when the factual allegations permit "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. In other words, "the non–

conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

In reviewing a motion to dismiss under Rule 12(b)(6), the court must assume the truth of all factual allegations and must construe all inferences from them in the light most favorable to the nonmoving party. *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002); *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996). Legal conclusions, however, need not be taken as true merely because they are cast in the form of factual allegations. *Ileto v. Glock, Inc.*, 349 F.3d 1191, 1200 (9th Cir. 2003); *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981). When ruling on a motion to dismiss, the court may consider the facts alleged in the complaint, documents attached to the complaint, documents relied upon but not attached to the complaint when authenticity is not contested, and matters of which the court takes judicial notice. *Lee v. Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001).

### 2. Anti-SLAPP Motion

California Code of Civil Procedure section 425.16 provides a procedure for a court "to dismiss at an early stage nonmeritorious litigation meant to chill the valid exercise of the constitutional rights of freedom of speech and petition in connection with a public issue." *Sipple v. Found. for Nat'l Progress*, 71 Cal. App. 4th 226, 235 (1999) (citation and footnote omitted). This type of nonmeritorious litigation is referred to under the acronym "SLAPP,'" or "Strategic Lawsuit Against Public Participation." *Id.* The archetypal SLAPP complaint is a "generally meritless suit[ ] brought by large private interests to deter common citizens from exercising their political or legal rights or to punish them for doing so." *Wilcox v. Superior Ct.*, 27 Cal. App. 4th 809, 816 (1994) (disapproved on other grounds) (citation omitted). The anti-SLAPP statute provides:

A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that there is a probability that the plaintiff will prevail on the claim.

Cal. Civ. Proc. Code § 425.16(b)(1). Section 425.16 thus "allows a court to strike any cause of action that arises from the defendant's exercise of his or her constitutionally protected free speech rights or petition for redress of grievances." *Flatley v. Mauro*, 39 Cal. 4th 299, 311-12 (2006).

California's anti-SLAPP statute is available to litigants in federal court. *In re NCAA Student–Athlete Name & Likeness Licensing Litig.*, 724 F.3d 1268, 1272 (9th Cir. 2013); *see also Batzel v. Smith*, 333 F.3d 1018, 1025-26 (9th Cir. 2003). While section 425.16 "does not apply to federal law causes of action,'" it does apply to "state law claims that federal courts hear pursuant to their diversity jurisdiction[.]" *Hilton v. Hallmark Cards*, 599 F.3d 894, 900 n.2, 901 (9th Cir. 2010).

B.   Analysis

1.   Motion to Dismiss

The Court first turns attention to Defendants' Motion to Dismiss. In that Motion, Defendants seek dismissal of both of GOLO's Lanham Act claims and the trade libel claim.

a.   GOLO's Lanham Act Claims

The Amended Complaint brings a Lanham Act claim challenging the GOLO Review, and a claim based on the SilaLive Review. Under the Lanham Act, a

prima facie case requires a showing that (1) the defendant made a false statement either about the plaintiff's or its own product; (2) the statement was made in commercial advertisement or promotion; (3) the statement actually deceived or had the tendency to deceive a substantial segment of its audience; (4) the deception is material; (5) the defendant caused its false statement to enter interstate commerce; and (6) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct

diversion of sales from itself to the defendant, or by a lessening of goodwill associated with the plaintiff's product.

*Newcal Indus., Inc. v. Ikon Office Sol.*, 513 F.3d 1038, 1052 (9th Cir. 2008) (citation omitted).

### i    Actionable Statements

Defendants contend that GOLO has not identified any actionable statements by Defendants. Defs.' Mem. at 10, ECF No. 45-1. "To demonstrate falsity within the meaning of the Lanham Act, a plaintiff may show that the statement was literally false, either on its face or by necessary implication, or that the statement was literally true but likely to mislead or confuse consumers." *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997) (citation omitted).

First, as to the claim based on the GOLO Review, GOLO responds that the Amended Complaint alleges the GOLO Review: 1) inaccurately describes how GOLO was created; 2) inaccurately describes that GOLO makes any promises to consumers; 3) falsely states that GOLO should be taken 30 minutes before a meal in order to enjoy health benefits while also purportedly normalizing your insulin levels; 4) claims that out of all the ingredients listed, only Salacia bark has been linked to reduced diabetes symptoms, and none of the other ingredients have been linked to weight loss or normalized insulin levels; and 5) includes headlines that pose misleading questions which could cause readers to doubt GOLO's effectiveness and/or decide not to purchase GOLO. Pl.'s Opp. at 16, ECF No. 49.

GOLO asserts that "a line-by-line explanation as to why these statements are false and misleading is outside the scope of this Opposition." Pl.'s Opp. at 16. Instead, GOLO points to the Declaration of Chris Lundin, who is CEO of GOLO, and asserts that the declaration outlines why the statements are false and misleading. *Id.* Courts in this district have concluded that "a false advertising claim under the Lanham Act that is 'grounded in' or 'sounds in' fraud must meet the heightened pleading standards of Rule 9(b)." *Bobbleheads.com, LLC v. Wright Bros., Inc.*, 259 F. Supp. 3d 1087, 1095 (S.D.

Cal. 2017). Therefore, the plaintiff is required to "plead the time, place, and specific content of the false representations, the identities of the parties to the misrepresentation, and what about the statement is claimed to be misleading." *Seoul Laser Dieboard Sys. Co. v. Serviform, S.r.l.*, 957 F. Supp. 2d 1189, 1200 (S.D. Cal. 2013) (citation and quotation marks omitted). (meh I need a better rule statement than this).

GOLO's reliance on the Lundin Declaration is unavailing. "In determining the propriety of a Rule 12(b)(6) dismissal, a court may not look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss." *Schneider v. Cal. Dep't. of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998). However, "[f]acts raised for the first time in plaintiff's opposition papers should be considered by the court in determining whether to grant leave to amend or to dismiss the complaint with or without prejudice." *Broam v. Bogan*, 320 F.3d 1023, 1026 n.2 (9th Cir. 2003).

GOLO does not point the Court specifically to any allegations in the Amended Complaint that show why any of the purported statements are false or misleading. The Amended Complaint alleges that the review "inaccurately describes how GOLO was created as well as what GOLO 'promises.'" Am. Compl. ¶ 54, ECF No. 18. But GOLO does not point to any allegations in the Amended Complaint that explain how the review specifically described how GOLO was created and any "promises", and why such description is false or misleading. The Amended Complaint also claims that the review "falsely states" that: 1) "GOLO's Release Supplement should be taken '30 minutes before a meal' in order to 'enjoy health benefits while also purportedly normalizing your insulin levels;'" and 2) "Out of all of the ingredients listed [in the Release Supplement], only Salacia bark has been linked to reduced diabetes symptoms . . . Meanwhile, none of the other ingredients in Release have been linked to weight loss or normalized insulin levels." *Id.* Again, GOLO does not establish how the Amended Complaint provides sufficient factual detail to demonstrate the falsity of these statements.

The Amended Complaint also claims that "the GOLO Review includes bolded headlines that pose misleading questions which could cause readers to doubt GOLO's effectiveness and/or decide not to purchase GOLO." *Id.* ¶ 55. In a letter sent by GOLO's counsel to Supplement Police, GOLO alleged that the questions "GOLO – Insulin Resistance for Weight Loss?" and "How Does GOLO Claim to Work?" are "clearly intended to raise doubts in readers' minds, and paint GOLO's product as a potential sham." Ex. D to Am. Compl., ECF No. 18. First, it is unlikely that a question could be construed as an actionable "statement." Even assuming so, the Amended Complaint has not pleaded how these two questions would mislead or confuse customers, rather than simply framing the issues to be discussed in the review.

Count II of the Amended Complaint advances a Lanham Act claim "as to SilaLive and affiliated products, programs, and plans." Am. Compl. at 13, ECF No. 18. Defendants contend that as to this claim, GOLO does not explain what is false or misleading about any of Defendants' statements regarding SilaLive. Defs.' Mem. at 11, ECF No. 45-1. The Amended Complaint alleges that Supplement Police's review of SilaLive contains "false and/or misleading statements regarding SilaLive, including: that SilaLive is 'formulated with the greatest quartz crystals' and that its main ingredient 'will help you fight [common health] problems from the inside and thus give you a healthier, more permanent solution that artificial cures cannot promise you.'" Am. Compl. ¶ 50, ECF No. 18. GOLO does not point the Court to any allegations in the Amended Complaint that demonstrate the falsity of these statements. GOLO's Lanham Act claims will be dismissed for failure to state a claim based on this ground.

### ii. Commercial Injury

Defendants also argue that GOLO lacks standing under the Lanham Act because it has not alleged an injury to a commercial interest in sales or business reputation proximately caused by the alleged misrepresentations in the GOLO and SilaLive Reviews.

Under *Lexmark*, to demonstrate that a cause of action falls under the Lanham Act, a plaintiff must demonstrate that the cause of action falls within the "zone of interests" protected by the Lanham Act. *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 130 (2014). The zone-of-interests protects "a more-than-usually 'expan[sive]' range of interests.'" *Id.* at 129-30 (citation omitted).

"[T]o come within the zone of interests in a suit for false advertising under § 1125(a), a plaintiff must allege an injury to a commercial interest in reputation or sales." *Id.* at 131-32. Second, a plaintiff must demonstrate that its injuries are proximately caused by violations of the Lanham Act. *Id.* at 132. Specifically, "a plaintiff suing under § 1125(a) ordinarily must show economic or reputational injury flowing directly from the deception wrought by the defendant's advertising; and that occurs when deception of consumers causes them to withhold trade from the plaintiff." *Id.* at 133.

Defendants assert that Plaintiff has not or cannot allege any injury to its sales or business reputation proximately caused by the alleged misrepresentations because SilaLive is not a weight-loss product and does not compete with GOLO in the marketplace. As to the GOLO Review, Plaintiff cannot allege an injury because the GOLO Review does not mention SilaLive or direct readers to the page hosting the SilaLive Review; the GOLO Review, contrary to Plaintiff's assertion, recommends GOLO as a "cost-effective" weight-loss program; and SilaLive is not a weight loss program so no consumer looking for GOLO would be diverted into accepting SilaLive as a substitute.

Defendants' argument that SilaLive is not a direct competitor because it is not a weight-loss program and does not compete with GOLO is foreclosed by *Lexmark* where the Court rejected the "direct-competitor test" and adopted "zone of interests" test. *Lexmark*, 572 U.S. at 136 ("the direct-competitor test provides a bright-line rule; but it does so at the expense of distorting the statutory language"). Defendants do not argue that the false advertising allegations concerning SilaLive and GOLO Reviews do not fall within the "zone of interests" of the Lanham Act.

Here, the Court takes the allegations in the Amended Complaint as true. The Amended Complaint claims that Defendants compete with GOLO in the diet and weight-loss industry. Am. Compl., ECF No. 18 ¶ 24. Supplement Police, a website operated through HHN, provides product reviews that are bogus and without any scientific or factual testing and meant to provide Defendants with a competitive advantage and financial benefit by promoting their products, including SilaLive. *Id.* ¶¶ 39-49, 56, 58, 71. SilaLive is a "health supplement combining organic silica and pure food grade diatomaceous earth designed specifically to health the human body by safely flushing and eliminating harmful toxins and excess waste," and can be used "to improve our overall health" or to help detox or kickstart[] a diet." *Id.* ¶ 45. As a result, GOLO has been injured as a result of diverted sales from GOLO to SilaLive and other products Defendants are affiliated with and/or receive compensation from and GOLO's cost of corrective advertising to counteract these misrepresentations and false advertising. *Id.* ¶¶ 78, 85. These allegations state a claim of "economic or reputational injury flowing directly from the deception wrought by the defendant's advertising; and that occurs when deception of consumers causes them to withhold trade from the plaintiff." *Lexmark,* 572 U.S. at 133.

Additionally, Defendants challenge the claim that the GOLO Review diverted readers away from the GOLO diet where the GOLO Review, in fact, recommended the GOLO diet as a "cost-effective" program. However, on a motion to dismiss, the Court does not consider facts outside the complaint but takes the allegations in the Amended Complaint as true. The Court concludes that the Amended Complaint alleges an injury subject to the Lanham Act.

### iii.    Commercial Speech

Finally, Defendants contend that the GOLO Review is not commercial speech subject to the Lanham Act. Similarly, they argue that the GOLO Review did not mention SilaLive or direct readers to the page hosting the SilaLive review so they have failed to demonstrate that Defendants have a commercial interest in that product.

The Ninth Circuit has held that "representations constitute commercial advertising or promotion under the Lanham Act if they are: 1) commercial speech; 2) by a defendant who is in commercial competition with plaintiff; 3) for the purpose of influencing consumers to buy defendant's goods or services. While the representations need not be made in a 'classic advertising campaign,' but may consist instead of more informal types of 'promotion,' the representations 4) must be disseminated sufficiently to the relevant purchasing public to constitute 'advertising' or 'promotion' within that industry." *Rice v. Fox Broadcasting Co.,* 330 F.3d 1170, 1181 (9th Cir. 2003) (quoting *Coastal Abstract Serv. v. First Am. Title Ins. Co.,* 173 F.3d 725, 735 (9th Cir. 1999)).

To determine whether GOLO Review constitutes commercial speech, the Court considers three factors set forth in *Bolger v. Youngs Drug Prods. Corp.,* 463 U.S. 60, 66–67 (1983). "[C]ommercial speech is found where the speech is an advertisement, the speech refers to a particular product, and the speaker has an economic motivation." *Hunt v. City of Los Angeles*, 638 F.3d 703, 715 (9th Cir. 2011) (citing *Bolger*, 463 U.S. at 66–67). "Publications have sometimes met this requirement." *Ariix, LLC v. NutriSearch Corp.,* Case No. 17cv320-LAB(BGS), 2018 WL 1456928, at *4 (S.D. Cal. Mar. 23, 2018) (citing *Semco, Inc.v. Amcast, Inc.,* 52 F.3d 108, 112–13 (6th Cir. 1995) (article written for a trade magazine and "peppered with advertising" for the defendant company's products was held to be a commercial promotion)).

The parties do not dispute that the Lanham Act does not apply to reviews of consumer products but if a review contains commercial product promotion, they may fall under the Lanham Act. *See Interlink Prods. Int'l, Inc. v. F & W Trading LLC*, Civil Action No. 15cv1340 (MAS)(DEA), 2016 WL 1260713 at *8-9 (D.N.J. Mar. 31, 2016) (denying motion to dismiss based on allegations Defendants manipulated product reviews by enlisting biased professional reviewers intended for consumers to rely on them when selecting a product to purchase).

The Amended Complaint claims that the GOLO Review contains inaccurate and misleading statements including "none of the other ingredients in Release have been

linked to weight loss or normalized insulin levels." Am. Compl. ¶ 54, ECF No. 18. It further alleges that the GOLO Review on Defendants' website is surrounded by advertisements and links to products and websites unrelated to but, in many cases, in direct competition with GOLO. *Id.* ¶ 56. At the bottom of the GOLO Review, there is an invitation for readers to "Shop Related Products" with advertisements that link to four non-GOLO weight-loss supplements available for sale on Amazon.com. *Id.* ¶ 57. Supplement Police is affiliated with and/or receive commissions or other compensation from some or all of the products linked to the GOLO Review. *Id.* ¶ 58. The Amended Complaint also complains that Supplement Police reviews are not based on any scientific or factual testing. *Id.* ¶ 40. The reviews are biased and designed solely for Defendants' benefit and not the public. *Id.* ¶¶ 41-42. Supplement Police provides a "particularly positive review" of SilaLive. *Id.* ¶ 44. The SilaLive Review also provides links to the SilaLive website where consumers can make purchases. *Id.* ¶ 47. GOLO has been injured by the loss of sales due to the diversion of sales from GOLO to SilaLive and other product programs and the costs for corrective advertising to counteract Defendants' misrepresentations, and by a lessening of the goodwill associated with GOLO's goods and services. *Id.* ¶ 78.

Plaintiff has alleged the speech is an advertisement of competing GOLO products, and Defendants' GOLO Review containing false representations are meant to discourage use of GOLO products and turn to products promoted by Defendants to economically benefit them.

Defendants' citation to *GOLO, LLC v. HighYa, LLC*, 310 F. Supp. 3d 499 (E.D. Pa. 2018) where the district court granted the dismissal of the Lanham Act because there was no allegation that the GOLO reviews were commercial speech is distinguishable. *Id.* at 507. In that case, the court explained it granted dismissal because, *inter alia*, when the plaintiff objected to the review, the defendants amended the review and advised its readers that changes to the review were made based on additional information provided by GOLO which the court concluded does not plausibly support an inference that the

review was meant to create an economic advantage for competing products; and defendants disclosed a commercial relationship with another fitness product negating any indication that it was engaged in covert competition. *Id.* at 506. Here, in contrast, Plaintiff claims that Defendants removed the GOLO review after its counsel sent a cease and desist letter to them with no attempt to correct any claimed misrepresentations. Am. Compl. ¶¶ 66, 67, ECF No. 18. Moreover, Supplement Police does not disclose the identity of its owners and actively hides its association with SilaLive. *Id.* ¶¶ 48-49. The district court in *HighYa* noted "Plaintiff is correct that liability can arise under the Lanham Act if websites purporting to offer reviews are in reality stealth operations intended to disparage a competitor's product while posing as a neutral third party." Id. at 505. Here, Plaintiff has sufficiently alleged that the GOLO Review constitutes commercial speech subject to the Lanham Act and the Court DENIES Defendants' motion to dismiss the Lanham Act causes of action.

### b. GOLO's Trade Libel Claim

GOLO's Amended Complaint advances a claim for trade libel under "Pennsylvania common law." Am. Compl. at 14, ECF No. 18. In cases transferred under § 1406(a), "the law of the transferee district, including its choice-of-law rules, is applicable." *Muldoon v. Tropitone Furniture Co.*, 1 F.3d 964, 967 (9th Cir. 1993). Under California's choice of law rules, the Court "must first consider whether the two states' laws actually differ." *Arno v. Club Med Inc.*, 22 F.3d 1464, 1467 (9th Cir. 1994). The parties do not disagree that California and Pennsylvania's law on trade libel do not materially differ as to the requirement of pleading pecuniary loss.

Under California law, "[t]rade libel is an intentional disparagement of the quality of services or product of a business that results in pecuniary damage to the plaintiff." *J-M Mfg. Co. v. Phillips & Cohen LLP*, 247 Cal. App. 4th 87, 97 (2016). "A cause of action for trade libel requires pleading and showing special damages." *Piping Rock Partners, Inc. v. David Lerner Associates, Inc.,* 946 F. Supp. 2d 957, 981 (N.D. Cal. 2013).

> It is not enough to show a general decline in . . . business resulting from the falsehood, even where no other cause for it is apparent; . . . it is only the loss of specific sales that can be recovered. This means, in the usual case, that the plaintiff must identify the particular purchasers who have refrained from dealing with him, and specify the transactions of which he claims to have been deprived.

*Branca v. Heal the World Found.*, No. CV0907084DMGPLAX, 2010 WL 11460003, at *4 (C.D. Cal. Apr. 5, 2010) (quoting *Erlich v. Etner*, 224 Cal. App. 2d 69, 73-74 (1964)).

"General allegation of damages is insufficient to properly plead special damages for trade libel." *Baker v. FirstCom Music*, No. LACV168931VAPJPRX, 2017 WL 9510144, at *11 (C.D. Cal. July 27, 2017) (quotation marks omitted) (citing *Elec. Waveform Lab Inc. v. Work–Loss Data Inst., LLC*, No. 15–cv–0794–AG, 2015 WL 12684232, at *4 (C.D. Cal. Aug. 25, 2015) (finding special damages were insufficiently pled where plaintiff alleged it "has suffered and continues to suffer lost profits and damages to its business reputation and good will"); *Code Rebel, LLC v. Aqua Connect, Inc.*, No. 13-cv-4539-RSWL, 2013 WL 5405706, at *5 (C.D. Cal. Sept. 24, 2013) (finding plaintiff failed to plead special damages with requisite particularity because plaintiff did not allege "the amount of business it had from the third party prior to the defendant allegedly making these statements, how much it had after, or the value of the business").

In *Homeland Housewares, LLC v. Euro-Pro Operating LLC*, the district court concluded that "Plaintiffs cannot satisfy the special damages requirement for trade libel under California law." No. CV 14-03954 DDP MANX, 2014 WL 6892141, at *4 (C.D. Cal. Nov. 5, 2014). Plaintiffs in that case pleaded that they suffered "lost sales, disruption of business relationships, loss of market share and of customer goodwill" and requested $3 million dollars in damages in their prayer for relief. *Id.* The court found that these "general statements of economic loss . . . do not sufficiently identify special damages." *Id.*

In Pennsylvania,

Trade libel, also called "injurious falsehood," consists of the publication of a disparaging statement concerning the business of another and is actionable where:

(1) the statement is false; (2) the publisher either intends the publication to cause pecuniary loss or reasonably should recognize that publication will result in pecuniary loss; (3) pecuniary loss does in fact result; and (4) the publisher either knows that the publication is false or acts in reckless disregard of its truth or falsity.

*Maverick Steel Co. v. Dick Corp./Barton Malow*, 54 A.3d 352, 354 (Pa. Super. Ct. 2012) (citation omitted).

To state a claim for trade libel under Pennsylvania law, "a plaintiff must plead special damages." *Synthes, Inc. v. Emerge Med., Inc.*, No. CIV.A. 11-1566, 2014 WL 2616824, at *14 (E.D. Pa. June 11, 2014). "Generally, Pennsylvania law requires that a plaintiff claiming commercial disparagement plead damages with considerable specificity, by setting out in its complaint the names of the customers lost and financial loss resulting from the tort." *Id.* (citation and quotation marks omitted).

It is . . . necessary for the plaintiff to allege either the loss of particular customers by name, or a general diminution in its business, and extrinsic facts showing that such special damages were the natural and direct result of the false publication. If the plaintiff desires to predicate its right to recover damages upon general loss of custom, it should . . . allege facts showing an established business, the amount of sales for a substantial period preceding the publication, and amount of sales subsequent to the publication, facts showing that such loss in sales were the natural and probable result of such publication, and facts showing the plaintiff could not allege the names of particular customers who withdrew or withheld their custom.

*Id.* at *15 (citation omitted).

Moreover, "[u]nder federal pleading requirements, '[w]hen items of special damages are claimed, they shall be specifically stated.'" *Isuzu Motors Ltd. v. Consumers Union of U.S., Inc.*, 12 F. Supp. 2d 1035, 1047 (C.D. Cal. 1998) (quoting Fed. R. Civ. P.

9(g)[1]). "Thus, while the requirement that plaintiff plead special damages arises from state law governing a claim for product disparagement, the requirement that special damages be specifically pleaded stems from Fed. R. Civ. P. 9(g)." *Id.* Plaintiffs "should have alleged facts showing an established business, the amount of sales for a substantial period preceding the publication, the amount of sales subsequent to the publication, [and] facts showing that such loss in sales were the natural and probable result of such publication[.]" *Id.*

Here, GOLO has not sufficiently pleaded pecuniary loss. According to the Amended Complaint, the alleged false defamatory statements have "severely injured GOLO, in that they have tended to blacken and besmirch GOLO's reputation" and "loss of substantial revenue and goodwill." Am. Compl. ¶¶ 71, 92, ECF No. 18. These damages are conclusory and insufficient to plead special pecuniary loss under California or Pennsylvania law.[2]

Defendants also argue that the trade libel claim fails because GOLO has not alleged falsity of the representations. Because the Court ruled above that Plaintiff has failed to allege false representations on the Lanham causes of action, the same conclusion applies to the trade libel claim. Thus, the Court GRANTS Defendants' motion to dismiss the trade libel claim.[3]

c.  <u>Leave to Amend</u>

---

[1] Rule 9(g) provides "[i]f an item of special damage is claimed, it must be specifically stated." Fed. R. Civ. P. 9(g).

[2] Defendants also argue that Plaintiff has not sufficiently alleged "actual malice." The Court declines to address the adequacy of the actual malice allegation until Plaintiff has filed a second amended complaint and whether it will seek to assert a trade libel claim under California or Pennsylvania law.

[3] In the event Plaintiff seeks to assert claims based on third party user comments on Defendants' website, Defendants seeks dismissal of any claims pursuant to Section 230 of the Communications Decency Act of 1996, 47 U.S.C. § 230(c). In response, Plaintiff agrees that third party user comments on Defendants' review website immunizes them from liability under Section 230; however the exception does not apply if Defendants manipulated those comments. Plaintiff does not indicate whether it seeks to assert a cause of action based on these user comments. Because the Amended Complaint does not allege that Defendants manipulated the user comments, the Defendants' request for dismissal is not ripe and the Court declines to consider the issue.

In the event the Court grants Defendants' motion to dismiss, Plaintiff seeks leave of Court to file a Second Amended Complaint.

Where a motion to dismiss is granted, "leave to amend should be granted 'unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency.'" *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992) (quoting *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986)). In other words, where leave to amend would be futile, the Court may deny leave to amend. *See Desoto*, 957 F.2d at 658*; Schreiber,* 806 F.2d at 1401. Here, because Plaintiff can cure the deficiencies in the Amended Complaint, the Court grants GOLO leave to file a Second Amended Complaint. *See De Soto*, 957 F.2d at 658.

### 2. Defendants' Anti-SLAPP Motion

Defendants seek dismissal of the trade libel cause of action under California's anti-SLAPP statute.

### a. Whether California's Anti-SLAPP Provision Applies in This Case

The parties first disagree as to whether California's Anti-SLAPP law applies to this action. GOLO filed this case in the Eastern District of Pennsylvania, and asserts its trade libel claim under Pennsylvania law. In cases transferred under § 1406(a), "the law of the transferee district, including its choice-of-law rules, is applicable." *Muldoon v. Tropitone Furniture Co.*, 1 F.3d 964, 967 (9th Cir. 1993). Under California's choice of law rules, the Court "must first consider whether the two states' laws actually differ." *Arno v. Club Med Inc.*, 22 F.3d 1464, 1467 (9th Cir. 1994). Here, the parties agree that the anti-SLAPP statutes of California, Pennsylvania, and Delaware do differ. In Pennsylvania, the SLAPP statute is limited to communications "to a government agency relating to enforcement or implementation of an environmental law or regulation." 27 Pa. Const. Stat. § 8302(a). The Delaware statute applies to an "action involving public petition and participation," which it defines as an "action, claim, cross-claim or counterclaim for damages that is brought by a public applicant or permittee, and is materially related to

any efforts of the defendant to report on, rule on, challenge or oppose such application or permission." 10 Del. C. § 8136(a)(1). It defines "public applicant or permittee" as "any person who has applied for or obtained a permit, zoning change, lease, license, certificate or other entitlement for use or permission to act from any government body." *Id.* § 8136(a)(4).

"California applies the 'governmental interest analysis in resolving choice-of-law issues.'" *Francis v. Wynn Las Vegas*, 557 Fed. App'x 662, 664 (9th Cir. 2014) (quoting *Kearney v. Salomon Smith Barney, Inc.*, 39 Cal. 4th 95, 107 (2006)). Under this approach, "the court 'evaluates and compares the nature and strength of the interest of each jurisdiction in the application of its own law to determine which state's interest would be more impaired if its policy were subordinated to the policy of the other state.'" *Id.* (quoting *Kearney*, 39 Cal. 4th at 107-08).

"California has expressed a strong interest in enforcing its anti-SLAPP law to 'encourage continued participation in matters of public significance' and to protect against 'a disturbing increase in lawsuits brought primarily to chill the valid exercise' of constitutionally protected speech." *Sarver v. Chartier*, 813 F.3d 891, 899 (9th Cir. 2016) (quoting Cal. Civ. Proc. Code § 425.16(a)). "California would appear to object strongly to the absence of a robust anti-SLAPP regime." *Id.* (finding that "the competing interests of the states tilt in favor of applying California law," rather than New Jersey anti-SLAPP law). On the other hand, Pennsylvania's or Delaware's interests would be less harmed by the use of California law.

"Additionally, the 'state with the "predominant" interest' in applying its law 'normally is the state in which the underlying conduct occurs,' which would likely be California, as the . . . defendants largely reside and work in" California. *Resolute Forest Prod., Inc. v. Greenpeace Int'l*, 302 F. Supp. 3d 1005, 1015 (N.D. Cal. 2017) (applying California's anti-SLAPP statute under California choice of law analysis). Similarly, "California has a great interest in determining how much protection to give California speakers." *Glob. Relief v. New York Times Co.*, No. 01 C 8821, 2002 WL 31045394, at

*11 (N.D. Ill. Sept. 11, 2002) (applying California anti-SLAPP statute to Illinois defamation claim).

For that reason, courts often find that "the place where the allegedly tortious speech took place and the domicile of the speaker are central to the choice-of-law analysis on this issue." *Chi v. Loyola Univ. Med. Ctr.*, 787 F. Supp. 2d 797, 803 (N.D. Ill. 2011); *see also Diamond Ranch Acad., Inc. v. Filer*, 117 F. Supp. 3d 1313, 1323 (D. Utah 2015). This is because "[a] state has a strong interest in having its own anti-SLAPP law applied to the speech of its own citizens, at least when, as in this case, the speech initiated within the state's borders." *Chi*, 787 F. Supp. 2d at 803; *see also Underground Sols., Inc. v. Palermo*, 41 F. Supp. 3d 720, 726 (N.D. Ill. 2014) ("A speaker's residence" is "one of the 'central' factors to be considered . . . because of a state's acute interest in protecting the speech of its own citizens, which counsels in favor of applying the anti-SLAPP statute of a speaker's domicile to his statements."); *Diamond Ranch*, 117 F. Supp. 3d at 1324 ("Ms. Filer's California residence, California's strong interest in protecting its citizens' free speech activities, and the court's conclusion that the record, fairly construed, shows that much of the speech likely originated in California, all weigh strongly in favor of applying California's, not Utah's, anti-SLAPP law.").

In *Francis*, the plaintiff argued that Nevada's anti-SLAPP statute, not California's, applied. 557 Fed. App'x. at 664. The Ninth Circuit found that California's anti-SLAPP statute applied because California "is both the domicile and selected forum" of the plaintiff, and also because "apply[ing] Nevada's law would improperly limit California's expansive defendant-friendly policy." *Id.*

Here, California is not the domicile of the plaintiff. Rather, GOLO is domiciled in Delaware. This factor seems to weigh in favor of applying Delaware law. But, looking to the other factors in *Francis*, this case was transferred to California, and in considering the competing interests of both states, the balance tips in favor of applying California law as applying Delaware law, "would improperly limit California's expansive defendant-friendly policy." *Id.* Therefore, the Court applies California's anti-SLAPP statute.

3:18-cv-2434-GPC-MSB

### b.    First Prong

"A court considering a motion to strike under the anti-SLAPP statute must engage in a two-part inquiry." *Mindys Cosmetics, Inc. v. Dakar*, 611 F.3d 590, 595 (9th Cir. 2010) (citation omitted). "First, the defendant must make a prima facie showing that the plaintiff's suit arises from an act in furtherance of the defendant's rights of petition or free speech." *Id.* (citation and quotation marks omitted). An "act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue" includes "any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest." Cal. Civ. Proc. Code § 425.16(e)(3).

"Web sites accessible to the public . . . are 'public forums' for purposes of the anti-SLAPP statute." *Barrett v. Rosenthal*, 40 Cal. 4th 33, 41 n.4 (2006). Defendants contend that their speech at issue was "in connection with an issue of public interest" because GOLO has described its product as a "leading weight loss and wellness program," "the top-searched diet on Google in 2016," and "endorsed, and even used by, multiple doctors." In support of this position, Defendants rely on *Wong v. Jing*, where the court reasoned that a negative review of a dentist's services on the rating website Yelp.com constituted an issue of public interest because "consumer information that goes beyond a particular interaction between the parties and implicates matters of public concern that can affect many people is generally deemed to involve an issue of public interest for purposes of the anti-SLAPP statute." 189 Cal. App. 4th 1354, 1366 (2010).

However, in *Wong*, the website posting was of public interest because it dealt with the more general issue of the effects of dentists' use of certain products, not just a highly critical opinion of a particular dentist. The court determined that the review went "beyond parochial issues concerning a private dispute about particular dental appointments. It implicitly dealt with the more general issues of the use of nitrous oxide and [mercury in dental fillings], implied that those substances should not be used in treating children, and informed readers that other dentists do not use them. Thus, the

review was not just a highly critical opinion of [the dentist's] performance on particular occasions; it was also part of a public discussion and dissemination of information on issues of public interest." *Id.* at 1367.

"It is well established that commercial speech that does nothing but promote a commercial product or service is not speech protected under the anti-SLAPP statute." *L.A. Taxi Coop., Inc. v. The Indep. Taxi Owners Ass'n of Los Angeles*, 239 Cal. App. 4th 918, 927 (2015) (finding that advertisements were not made in connection with a matter of public interest because they were not about taxicab companies in general, public transportation, or taxicab licensing and regulation, but rather were limited to information about a specific taxicab company). In *Consumer Justice Ctr. v. Trimedica Int'l, Inc.*, 107 Cal. App. 4th 595, 601 (2003), the court concluded that speech about a specific product was not a matter of public interest because the speech was not about herbal dietary supplements in general, but about the specific properties and efficacy of a particular product. *Id.* Here, Defendants have not shown that the review dealt with more general issues of weight loss and health, rather than just a review of GOLO's specific product.

Defendants also cite *Ariix, LLC v. NutriSearch Corp.*, No. 17CV320-LAB (BGS), 2018 WL 1456928, at *3 (S.D. Cal. Mar. 23, 2018), for the proposition that "[r]eviews of commonly-used products fit comfortably within" matters of public concern. However, in that case, the court addressed the limits of the Lanham Act, and did not address the scope of an "issue of public interest" under California anti-SLAPP law.

Finally, Defendants cite *DuPont Merck Pharm. Co. v. Superior Ct.*, 78 Cal. App. 4th 562, 567 (2000), where the court found the advertising to be an issue of public interest. The *DuPont* plaintiffs sued the manufacturer of a drug Coumadin for disseminating false information concerning an alternative generic product. The plaintiffs alleged that "[m]ore than 1.8 million Americans have purchased Coumadin, an anti-coagulant medication, for the prevention and treatment of blood clots that can lead to life-threatening conditions such as stroke and pulmonary embolism." *Id.* at 567. Based on those facts, the court concluded that the first prong of the anti-SLAPP statute had been

satisfied, because "[b]oth the number of persons allegedly affected and the seriousness of the conditions treated establish the issue as one of public interest." *Id.*

Here, Defendants rely heavily on the fact that GOLO was the top-searched diet on Google in 2016 and a leading weight loss program. However, the *Scott* court explicitly disagreed with the proposition that "simply because a lawsuit affects a large number of consumers and involves a life-threatening illness, it will satisfy the public interest requirement of the statute." *Scott v. Metabolife Int'l, Inc.*, 115 Cal. App. 4th 404, 423 (2004). And in *Nagel v. Twin Labs., Inc.*, the court found that the list of product ingredients was not in connection with a public issue, even though the court acknowledged that "[t]he number of consumers of products containing ephedrine is at least comparable" to that in *DuPont*. *Nagel v. Twin Labs., Inc.*, 109 Cal. App. 4th 39, 50 (2003). The court further noted that "while matters of health and weight management are undeniably of interest to the public, it does not necessarily follow that all lists of ingredients on labels of food products or on the manufacturers' Web sites are fully protected from legal challenges by virtue of section 425.16." *Id.* at 425. In other words, it appears that *Nagel* stands for the proposition that that just because GOLO is a "leading weight loss and wellness program," that does not necessarily mean that Defendants' speech about GOLO is an issue of public interest.

The court in *Scott* distinguished the nature of the speech in *DuPont* from the case before it and from *Consumer Justice Center*. In *DuPont*, "the manufacturer was disseminating false information about a competing generic product, not simply its own product." *Scott*, 115 Cal. App. 4th at 423. Defendants have not argued that their statements were a matter of public interest because they related to "a competing" product, and Defendants have also affirmatively argued that "SilaLive is not a 'weight loss product' that competes directly with the GOLO Diet." Reply at 7, ECF No. 52. The Court concludes that Defendants have failed to present a prima facie case that the GOLO's suit arises from an act in furtherance of Defendants' rights of petition or free speech.

### c.    Second Prong

On the second prong, "once the defendant has made a prima facie showing, the burden shifts to the plaintiff to demonstrate a probability of prevailing on the challenged claims." Mindys Cosmetics, 611 F.3d at 595.  However, when defendants fail to meet their initial burden, the court need not consider whether plaintiff has demonstrated a probability of success before denying a special motion to strike.  *Rouse v. Law Offices of Rory Clark*, 465 F. Supp. 2d 1031, 1038 (S.D. Cal. 2007) (citing *A.F. Brown Electrical Contractor, Inc. v. Rhino Electric Supply, Inc*., 137 Cal. App. 4th 1118, 1129 (2006)); *Martinez v. Metabolife Int'l, Inc*., 113 Cal. App. 4th 181, 193 (2003) (holding that unless defendants carry their burden at the first step of the anti-SLAPP analysis to show the suit arises from acts in furtherance of their protected activity, the court must deny the motion).  In this case, because Defendants' motions can be resolved at the first step of the anti-SLAPP analysis, the Court need not address the second step.

Accordingly, the Court DENIES Defendants' special motion to strike the trade libel cause of action as well as their request for attorney's fees and costs incurred in defending against this claim.[4]

In its opposition, GOLO seeks attorney's fees and costs if the motion to strike is denied because the anti-SLAPP motion is frivolous.  Section 425.16 provides in relevant part, "[i]f the court finds that a special motion to strike is frivolous or is solely intended to cause unnecessary delay, the court shall award costs and reasonable attorney's fees to a plaintiff prevailing on the motion, pursuant to Section 128.5." Cal. Civ. Proc. Code § 425.16(c).  Section 128.5 defines frivolous as "totally and completely without merit or for the sole purpose of harassing an opposing party."  Cal. Civ. Proc. Code § 128.5(b)(2); *see Moore v. Shaw*, 116 Cal. App. 4th 182, 200 (2004) (the defendant's conduct in drafting a

---

[4] Because Defendants have not demonstrated the first prong of the anti-SLAPP analysis which defeats their motion, the Court need not address Plaintiff's additional argument that the commercial speech exemption under California Code of Civil Procedure section 425.17 applies.

termination agreement was a private transaction unconnected to any "public issue" or "issue of public interest" and "totally devoid of merit").

Here, Defendants raised facts and non-frivolous arguments to support their motion. Product reviews on a website constitute "public forums" and as demonstrated in the discussion above, product reviews may also involve an issue of "public interest." *See* Cal. Civ. Proc. Code § 425.16(e)(3); *Wong*, 189 Cal. App. 4th at 1366. Defendants' anti-SLAPP motion was not "totally devoid of merit." Accordingly, the Court DENIES Plaintiff's request for attorney's fees and costs in opposing the motion to strike.

### III. CONCLUSION

For the reasons explained above, the Court issues the following rulings:

1.      Defendants' Motion to Dismiss Amended Complaint for Failure to State a Claim, EFC No. 45, is **GRANTED**. Plaintiff's Amended Complaint is **DISMISSED WITHOUT PREJUDICE** to leave to amend.

2.      Defendants' Special Motion to Strike Pursuant to Cal. Code Civ. Proc. § 425.16, ECF No. 46, and for Attorney's Fees and Costs are **DENIED**.

3.      In the event that Plaintiff wishes to file a Second Amended Complaint, the Second Amended Complaint must be filed no later than twenty days following the filing of this order.

**IT IS SO ORDERED.**

Dated:  February 5, 2019

Hon. Gonzalo P. Curiel
United States District Judge